748 So.2d 167 (1999)
Don William Clyde TROLLINGER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00327-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*168 William F. Travis, Southaven, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
DIAZ, J., for the Court:
¶ 1. Don Trollinger appeals a manslaughter conviction and a twenty year sentence in the custody of the Mississippi Department of Corrections. Trollinger challenges the Desoto County Circuit Court's decision to deny him a judgment notwithstanding the verdict or a new trial. Additionally, he argues that the trial court committed error in failing to determine that he was denied a fair trial based on the State's failure to preserve exculpatory evidence. We find no error and affirm.

THE FACTS
¶ 2. On January 11, 1997, David Gianelloni and George Deviney went hunting. The two returned from the expedition to County Haven trailer park in Southhaven, Mississippi where they both had homes. After the trip, Gianelloni wrapped his hunting rifle in clothes and towels and put it in the rear of his dark colored Jeep Cherokee. Later that evening, Gianelloni and his girl friend, Teresa Gill, went to Deviney's and the threesome drank beer. Gianelloni and Gill left Deviney's at approximately 11:30 p.m. and according to Deviney, Gianelloni did not appear intoxicated.
¶ 3. Don Trollinger spent the same evening drinking and watching movies with his friend, Douglas Raskey. He left Raskey's home at approximately 11:30 p. m. and drove to his trailer. Trollinger, who testified on his own behalf, admitted that when traveling within the trailer park he carried a blue bag containing his .44 magnum. He indicated that he carried his gun with him because he had reason to fear for his life. In fact, according to Trollinger, David Gianelloni had threatened his life in the past. Jason Sims, a reserve deputy of the Desoto County Sheriff's Department, *169 verified that on May 26, 1996, he filed a report in which Trollinger alleged that David Gianelloni threatened his life twice. The report further indicated that Trollinger feared for his life.
¶ 4. After leaving Raskey's home, Trollinger drove to his trailer and saw a "vehicle come through" which pulled into his driveway. Trollinger heard one of the passengers yell something but indicated that he could not hear what was said. Further, he stated that he did not recognize who was in the vehicle at that time. Thereafter, he approached the passenger side of the vehicle. He saw a woman sitting in the passenger seat and when he saw the driver lean forward in the vehicle, he saw that it was David Gianelloni. Trollinger testified that he saw a sawed-off shot gun pointed at him, feared for his life, and fired his gun twice.
¶ 5. Immediately after the shooting, Trollinger went inside his trailer and called his son claiming to have been ambushed. His son advised him to call the sheriffs department which Trollinger did. In his conversation with the 911 operator, Trollinger reported that someone had "just tried to kill him," he retaliated and believed that he may have shot someone. David Gianelloni died as a result of a gunshot wound to his face.
¶ 6. Michael Fox, a resident of the trailer park at the time of the shooting, witnessed Trollinger shoot the driver of the Jeep Cherokee. While on the porch of the trailer in which he was living, Fox saw Trollinger argue with those inside the vehicle and saw flashes and heard noises of what he thought might have been fire-crackers. Fox then saw Trollinger return to his trailer with a gun in his hand.
¶ 7. Several investigating officers who arrived on the scene and who were involved in the investigation of the shooting testified at trial. Officer Brian Talley, a patrolman with the Desoto County Sheriffs Department, first discovered Gianelloni's rifle found in the rear of the Jeep Cherokee. He testified that in the cargo area of Gianelloni's vehicle he found a pile of hunting clothes and an "older model hunting rifle." Talley described the rifle as a very long, bolt-action rifle and that it was not a double or single barreled sawed-off shot gun. Officer Keith Combes, also with the Desoto County Sheriff's Department, tagged the rifle and placed it into the area where evidence is kept. He testified that, apparently, the tag identifying the rifle accidentally fell off, and it was assigned to a group of firearms designated for destruction. The rifle was confirmed to have been destroyed by documents from the Desoto County Sheriff's Office, and Officer Combes admitted that the rifle's destruction was a mistake.
¶ 8. At the conclusion of the State's case, Trollinger moved for a directed verdict arguing that the State failed to prove premeditation for the crime of murder. Trollinger further urged the trial court to consider the fact that the rifle was exculpatory evidence which was destroyed and that the absence of such evidence was significant to Trollinger's case and that the effects on the jury of the absence of the rifle from evidence could not be known. The trial court disagreed with Trollinger's position and ruled that the State had shown sufficient evidence on which the jury could find that Trollinger murdered the victim.

THE ISSUES
¶ 9. On appeal, Trollinger assigns the following as error:
1. DID THE TRIAL COURT ERR IN OVERRULING TROLLINGER'S MOTION FOR DIRECTED VERDICT?
2. DID THE TRIAL COURT ERR IN FAILING TO DETERMINE THAT TROLLINGER WAS DENIED HIS RIGHT TO A FAIR TRIAL IN THAT CERTAIN EXCULPATORY EVIDENCE WAS NOT PRESERVED?

DISCUSSION

1. DID THE TRIAL COURT ERR IN OVERRULING TROLLINGER'S MOTION FOR DIRECTED VERDICT?
*170 ¶ 10. A motion for a directed verdict implicates the sufficiency of the evidence supporting the jury's verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The standard upon which we review a challenge to the sufficiency of the evidence where a defendant is found guilty is wellsettled:
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383, 1388 (Miss. 1995) (citations omitted). "[I]f there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled." Roberson v. State, 595 So.2d 1310, 1320 (Miss.1992).
¶ 11. At the close of the State's case against him, Trollinger moved the trial court to grant him a directed verdict arguing that there was insufficient proof beyond a reasonable doubt that there was any deliberate design or plan on Trollinger's part to commit murder. Trollinger also argued that the trial court consider the State's destruction of David Gianelloni's hunting rifle as a basis for his entitlement to a directed verdict. He submitted that the rifle was a material piece of evidence and the effect of not having that evidence to show to the jury could not be known. The trial court denied the motion for directed verdict concluding the State had met its burden of proof and that a jury question on whether there was any deliberate design by Trollinger had been made. Trollinger's objection was renewed in his motion for a judgment notwithstanding the verdict or a new trial in which he asserted that the evidence was insufficient to support his guilty verdict.
¶ 12. Trollinger's argument on appeal that he was entitled to a directed verdict because the State had not shown premeditation is misplaced. While Trollinger was charged with murder, the jury was instructed and convicted him of the lesser-included-offense of manslaughter. Manslaughter is "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense...." Miss.Code Ann. § 97-3-35 (Rev.1994). Viewing the evidence in a light most favorable to the verdict, we are unable to conclude that there was insufficient evidence for the jury's conclusion that Trollinger was guilty of manslaughter. Trollinger asserted that the shooting occurred in self-defense, and the jury was instructed accordingly. It is clear by the verdict that Trollinger's self-defense theory was rejected by the jury. Thus, we find no merit in this assignment of error.

2. DID THE TRIAL COURT ERR IN FAILING TO DETERMINE THAT TROLLINGER WAS DENIED HIS RIGHT TO A FAIR TRIAL IN THAT CERTAIN EXCULPATORY EVIDENCE WAS NOT PRESERVED?
¶ 13. The evidence at trial established that David Gianelloni's hunting rifle was mistakenly destroyed by the Desoto County Sheriff's Department. Without citing any error by the trial court, Trollinger argues that he was denied a fair trial because the State failed to properly preserve exculpatory evidence. In response, the State asserts that this issue is barred on the ground that Trollinger failed to preserve this issue for our review in failing to object to this issue at trial. The State, however, failed to provide us any authority regarding its position that this issue is procedurally barred.
*171 ¶ 14. Only on one occasion did Trollinger make his position on this issue known to the trial court. In making his motion for a directed verdict after the State's case in chief, Trollinger's counsel stated:
One other thing, I know it's in the proof, but I would also like to use it as a basis. There is arguably a piece of material evidence that's been missing, although no intent on the part of the officials at the Desoto County Sheriff's Department but arguably a weapon that arguably could have been shown to the jury and what effect that may have had on them throughout the proof and through-the potential use of that piece of evidence in closing argument, is an unknown, and I think it's clear from the proof that they've inadvertently destroyed what could be called a material piece of evidence.
As stated, the trial court denied Trollinger a directed verdict on the basis that the State had produced sufficient evidence for the crime of murder for its submission to the jury. Trollinger failed to assign as error in his motion for a judgment notwithstanding the verdict or a new trial that he was denied a fair trial. Rather, his averments rested on arguments that the evidence was insufficient to support his guilty verdict or, alternatively, that the overwhelming weight of the evidence presented at trial required Trollinger's release from the judgment. See Pool v. State, 483 So.2d 331, 335 (Miss.1986) (holding that defendant was procedurally barred from raising issue on appeal where issue was listed as grounds in motion for new trial). In presenting his argument on appeal, Trollinger did not indicate under what constitutional sections he claims his right to a fair trial was denied, and more importantly he failed to point out any error on the part of the trial court. Interestingly, Trollinger did not object to testimony offered by Officer Talley and Officer Combes concerning the description of Gianelloni's hunting rifle.
¶ 15. It is well-settled law that a trial court will only be put in error for a matter brought to his attention. See Jones v. State, 724 So.2d 1066, 1068 (Miss. Ct.App.1998); but see Griffin v. State, 557 So.2d 542, 551-54 (Miss.1990) (stating where a defendant has been denied a fundamentally fair trial, contemporaneous objections are not required). In this case, Trollinger never gave the trial court an opportunity to rule on whether or not he was denied a fair trial by the State's failure to preserve evidence. He noted it in his argument on his motion for directed verdict, but it is clear that the primary basis of his motion was the insufficiency of the evidence presented by the State. Trollinger has given us no authority to support a position that absent a proper objection or motion to dismiss, the trial court was required to make a sua sponte determination of whether the State's actions denied Trollinger a fair trial. Consequently, we rule that Trollinger was not denied a fair trial and that he failed to preserve this issue for our review.
¶ 16. Notwithstanding a procedural bar, this issue is without merit. Regarding evidence destroyed by the State, the Mississippi Supreme Court has ruled that:
The rule governing the State's destruction of physical evidence is discussed in Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987), in which this Court held that the State's duty to preserve evidence is limited to evidence that is expected to play a significant role in the defense. To play a constitutionally significant role in the defense, the exculpatory nature of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means. See also California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984); Johnston v. State, 618 So.2d 90, 92 (Miss. 1993). *172 Banks v. State, 725 So.2d 711, 714-15 (Miss.1997). Additionally, "[t]he mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard." Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987), citing United States v. Binker, 795 F.2d 1218, 1230 (5th Cir.1986). Lastly, the State's "destruction of the evidence must not have been done in bad faith." Tolbert, 511 So.2d at 1372 (citing United States v. Webster, 750 F.2d 307, 333 (5th Cir.1984)). "If the destruction of evidence was done as a matter of routine and with no fraudulent intent, there is no inference of bad faith." Taylor v. State, 672 So.2d 1246, 1271 (Miss.1996) (citing Washington v. State, 478 So.2d 1028, 1032 (Miss.1985)). Even if we were to conclude that hunting rifle was constitutionally significant to Trollinger's case, there is nothing in the record to suggest any bad faith on the part of the State. The rifle was in fact destroyed as part of a routine practice of destroying confiscated weapons.
¶ 17. As such, not only do we find that this assignment of error is procedurally barred, but it lacks merit as well.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.