906 So.2d 846 (2005)
William T. BUSICK, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00037-COA.
Court of Appeals of Mississippi.
January 11, 2005.
Rehearing Denied March 29, 2005.
Certiorari Denied June 23, 2005.
*851 William T. Busick, appellant, pro se.
Walter E. Wood, Ridgeland, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. A Madison County jury convicted William T. Busick of burglary of a dwelling. The Circuit Court of Madison County sentenced Busick as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections. Busick appeals, arguing that the trial court erroneously admitted his videotaped statement and other evidence because it was obtained pursuant to his arrest without probable cause and in violation of his Miranda rights, and that the verdict was against the overwhelming weight of the evidence. Busick asserts additional issues in a pro se supplemental brief which he obtained permission to file. We affirm.

FACTS
¶ 2. Scott Dufour testified that, on January 17, 2002 at approximately 6:45 p.m., he was reading in the bedroom of his home in Summertree subdivision in Madison, Mississippi. Dufour was an agent with the Federal Bureau of Investigation, but was off-duty at the time. Dufour heard blinds rattling and, looking up, saw a strange man take his wife's purse from the kitchen and run out of the house. Dufour arose, grabbed a gun, and chased the man through the neighborhood. During the chase, Dufour slipped and fell, causing him to accidentally fire the gun. The man escaped with the purse and drove away in a white Jeep Cherokee vehicle with a broken taillight. Dufour returned home and called 911. When the police arrived, Dufour *852 told them that the man had been wearing a camouflage hat and jacket. Dufour identified Busick at trial as the person he saw take the purse.
¶ 3. Investigator Mike Brown obtained an arrest warrant for Busick and, with Palmer, arrested Busick in a hotel room in Jackson. A white Jeep Cherokee with a missing taillight was parked outside. Upon entering Busick's room, Brown and Palmer noticed a purse on the floor matching the description of Kay Dufour's purse. The purse contained a prescription made out to Kay Dufour. Brown asked Busick if he would provide him with the rest of the contents of the purse. Busick agreed and led Brown and Palmer to a trash container where he had deposited the contents, including credit cards belonging to the Dufours. Brown and Palmer also found a camouflage hat and jacket in Busick's room that was identified by Dufour as the ones worn by the suspect.
¶ 4. Busick was transported to the police department and gave a statement to Palmer that included his version of the events. In the portion of statement played for the jury, Busick maintained that, while traveling through Madison County, he noticed that his car was low on gasoline. He pulled into Dufour's subdivision. He parked the car and walked down the street intending to locate some gasoline. He entered the Dufour's garage and noticed a purse inside a white SUV. He opened the car door, removed the purse, and left the garage. When Busick reached the street, Dufour ran out of the house, ordered Busick to freeze, and then raised a gun and shot at him. Busick clutched the purse in fear and ran back to his car.
¶ 5. Kay Dufour testified that her purse had been located on an island in the kitchen, not in her car. She stated that her car had been locked. The jury found Busick guilty of burglary of a dwelling.

LAW AND ANALYSIS

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO SUPPRESS THE DEFENDANT'S VIDEOTAPED STATEMENT AND THE STATEMENTS MADE AND THE PHYSICAL EVIDENCE GATHERED DURING THE DEFENDANT'S ARREST WITHOUT PROBABLE CAUSE.
¶ 6. Busick moved to suppress his videotaped statement and other evidence resulting from his arrest because the arrest warrant was issued without probable cause. After a suppression hearing, the trial court denied the motion. Probable cause is
a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Conerly v. State, 760 So.2d 737, 740 (¶ 8) (Miss.2000) (quoting Strode v. State, 231 So.2d 779, 782 (Miss.1970)). Thus, for a felony arrest warrant, a police officer must have (1) reasonable cause to believe that a felony has been committed, and (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it. Id. at (¶ 7).
¶ 7. A police officer desiring an arrest warrant must obtain a judicial determination that probable cause exists based upon affidavits or other evidence before the court. Id. The issuing judge's *853 determination of the existence of probable cause is to be a practical, common-sense decision rendered from the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information. Id. (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). On review of a judge's issuance of an arrest warrant, this Court determines whether the facts and circumstances before the judge provided a "`substantial basis . . . for conclud[ing] that probable cause existed.'" Byrom v. State, 863 So.2d 836, 860 (¶ 65) (Miss.2003) (quoting Gates, 462 U.S. at 238-39, 103 S.Ct. 2317),
¶ 8. At the suppression hearing in the case sub judice, Investigator Brown stated that, before the Dufour burglary occurred, he had already gathered information to obtain a warrant for Busick's arrest for an earlier burglary, at the Moore residence. On the night of the Dufour burglary, a municipal judge issued an arrest warrant for Busick based upon Brown's affidavit implicating Busick in the Moore burglary. Busick was arrested pursuant to that warrant and given Miranda warnings.
¶ 9. The affidavit stated that an unknown white male had entered the Moores' home and taken Mrs. Moore's purse, including credit cards. Later that day, the Moores' credit cards were used at Home Depot, Target, and Wal-Mart. Brown obtained a surveillance video tape of the suspect making a credit card purchase at Target. Detective Jeff Robertson of the Brandon Police Department phoned Brown and stated that Ruby Busick, Busick's mother, had brought him credit card receipts from Home Depot and Wal-Mart that she found in Busick's room. The receipts matched copies Brown had obtained from Home Depot and Wal-Mart. Also, two bicycles stolen from the Moore residence and neighboring Cartlidge residence about the time of the Moore burglary had been pawned by Busick.
¶ 10. At the suppression hearing, Busick did not contend that probable cause could not have arisen from the facts as alleged in Brown's affidavit. Instead, he attempted to show that much of the information in the affidavit was the product of false swearing by Brown. Busick argued that prior to the issuance of the warrant, Brown knew or should have known that Busick was not the person in the Target surveillance videotape because Brown admitted he had known Busick for ten years. Busick contended that the bicycles pawned by Busick were not identified as those stolen during the Moore burglary until after the warrant was issued. He asserted that Brown lied about the credit card receipts having been found in Busick's room because Robertson's written report said Busick's mother found the receipts in a desk and did not mention Busick's room. Finally, he argued that Brown could not have known the suspect was a white male because Mrs. Moore said she saw a "quick flash of clothing" that she thought was her son, not a white male. Busick renews these arguments on appeal.
¶ 11. When a defendant
makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the Affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the Defendant's request.
McNeal v. State, 617 So.2d 999, 1004 (Miss.1993) (quoting Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). If, at the hearing, "`the allegation of perjury or reckless disregard is established by the Defendant by a preponderance of the evidence,'" the *854 court must determine if, with the false material set aside, "the affidavit's remaining content . . . is sufficient to establish probable cause." Petti v. State, 666 So.2d 754, 758 (Miss.1995) (quoting Franks, 438 U.S. at 155-56, 98 S.Ct. 2674). If the remaining content provides insufficient support for a finding of probable cause, the arrest warrant "`must be voided and the fruits of the [arrest] excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" Id.
¶ 12. The trial court held a hearing though it never found that Busick made the substantial preliminary showing required by Franks. At the hearing, Brown admitted that after Busick's arrest he concluded that Busick was not the individual in the Target surveillance videotape. Brown stated that, when he obtained the warrant, he thought Busick was the person appearing in the tape based upon Busick's general description and his surmise that Busick was the person who had used the Moores' credit cards at Target, as evinced by the receipts for purchases made with the Moores' cards turned in by Busick's mother. Brown testified that, before obtaining the arrest warrant, Robertson had told him that two bicycles matching the descriptions of the stolen bicycles had been pawned by Busick. Brown stated that Robertson had orally informed him that Busick's mother found the credit card receipts in Busick's room. Initially, Brown recalled that Mrs. Moore had seen a white male, but later admitted that Mrs. Moore never said in her statement that she saw a white male. Brown supposed that, because Mrs. Moore was white, her son was probably white and thus, the suspect she mistook for her son was probably white.
¶ 13. Without holding that Busick's preliminary showing entitled him to a hearing, we find that Busick failed to prove by the preponderance of the evidence that the information in Brown's affidavit was perjured or evinced a reckless disregard for the truth. The determination of probable cause is made from the facts as known at the moment the warrant is requested and is unaffected by facts later discovered. Riddles v. State, 471 So.2d 1234, 1236-37 (Miss.1985). While it is undisputed that Brown mistakenly identified Busick as the person in the Target surveillance videotape, Brown testified that, at the time the warrant was issued, he believed Busick was the person appearing in the tape. That belief was reasonable based upon Brown's information that the suspect had made purchases with the Moores' credit cards at Target, that Busick's mother turned in receipts for purchases made with the Moores' credit cards, and Brown's knowledge that Busick's appearance was similar to that of the person in the tape. Brown was extensively cross-examined by Busick's appointed counsel, and, though the surveillance tape identification later proved to be false, there was no showing that Brown intentionally misidentified Busick or acted with reckless disregard for the truth. See Bevill v. State, 556 So.2d 699, 713 (Miss.1990).
¶ 14. Further, Brown's other testimony elicited by Busick on cross-examination did not sufficiently show Brown acted with deliberate or reckless disregard for the truth to overcome the presumption of validity attached to an arrest warrant. See Franks, 438 U.S. at 171, 98 S.Ct. 2674. "Allegations of negligence or innocent mistake are insufficient" Id. While Brown admitted Mrs. Moore's written statement did not state that the suspect was a white male, Brown's testimony indicates his inclusion of that fact in the affidavit did not rise above the level of an innocent mistake or, at worst, negligence. And, Brown testified that the other information in the affidavit came from Robertson. Brown *855 testified that prior to obtaining the arrest warrant, Robertson informed him that Busick's mother had found receipts for purchases made with the Moores' stolen credit cards in Busick's room and that he had located bicycles pawned by Busick that matched the descriptions of the stolen bicycles. Busick failed to show that Brown was intentionally or recklessly untruthful in constructing the affidavit. The evidence presented to the municipal judge provided a substantial basis for the judge's determination from the totality of the circumstances that probable cause existed to issue a warrant for Busick's arrest. We find that Busick's arrest was legal, and the trial court did not err in refusing to exclude the videotaped statement and physical evidence on this ground.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT A NEW TRIAL AFTER THE COURT ALLOWED THE ADMISSION OF STATEMENTS MADE BY DEFENDANT WHICH WERE VIDEOTAPED WITHOUT HIS KNOWLEDGE AFTER HE ASSERTED HIS MIRANDA RIGHTS.
¶ 15. Busick moved to suppress his videotaped statement on the ground that it was given in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After a suppression hearing, the trial court found that Busick knowingly, intelligently and voluntarily waived his Miranda rights and admitted the statement. Busick avers that the trial court erred because he in fact invoked the right to remain silent, or, alternatively, that he did not knowingly, intelligently and voluntarily waive the right due to mental impairment, police deception, and coercion. Additionally, he argues that the trial court erroneously admitted the contents of Kay Dufour's purse because he involuntarily divulged the contents to the police.
¶ 16. A statement by the accused is admissible if the accused was given the Miranda warnings, and then knowingly, intelligently and voluntarily waived the rights. Moore v. State, 493 So.2d 1301, 1303 (Miss.1986). Whether there has been a knowing, intelligent and voluntary waiver is a fact question for the trial court to determine from the totality of the circumstances. McGowan v. State, 706 So.2d 231, 235 (¶ 12) (Miss.1997). We will reverse the trial court's decision to admit a confession only if the decision was "manifestly in error or contrary to the overwhelming weight of the evidence." Id. at (¶ 11).
¶ 17. At the suppression hearing, Brown and Palmer testified that they administered the Miranda warnings to Busick at his arrest at the hotel. Palmer interviewed Busick at the police station with Brown present. At the beginning of the interview, Palmer read Busick his rights and ascertained that Busick understood each right and that Busick desired to talk to him about the Dufour burglary.
¶ 18. Busick argues that his statement was inadmissible because he invoked his right to remain silent when he declared that he did not want to waive his rights. Alternatively, he claims that he could not have voluntarily waived his rights because Palmer never informed him the interview was being videotaped with a camera hidden behind a two-way mirror. He cites the following exchange at the beginning of the tape as proof of police deception:
Busick: "Ain't nobody back [behind the two-way mirror], is there?"
Palmer: "Not this time of the morning."
Busick also argues he was mentally impaired at the time of the statement due to "post-traumatic stress disorder" that he *856 developed when Dufour shot at him. He further maintains that his sole impetus for speaking to Palmer was to bring charges against Dufour for the shooting.
¶ 19. The trial court held from all of the evidence presented that Busick knowingly, intelligently, and voluntarily waived his right to remain silent. From the court's review of the videotape, Busick impressed the court as someone who understood what he was doing. The court found that, though Busick initially stated that he did not want to waive his rights, he continually expressed a desire to talk to Palmer.
¶ 20. At the beginning of Busick's statement, he told Palmer, "I'm not going to waive my rights, but I want to tell ya'll [sic] what happened." Palmer read Busick his rights. After each right, he asked Busick if he understood, and Busick said "yes." Busick signed a sheet saying he had been fully informed and fully understood all his rights, including the right not to answer any questions and to terminate the interview at any time. Then, Palmer stated, "I understand you're saying you want to talk to us but you don't want to waive your rights." Palmer said that Busick did not have to talk to him and the decision was up to Busick. Busick admitted that he understood his rights, knew he did not have to give a statement, was experienced with the system, and that no threats or promises had been made to him. He stated, "I want to talk because I think it's a big mix-up." Palmer said Busick could riot talk unless he understood his lights. Busick again stated that he wanted to talk, and Palmer began questioning Busick.
¶ 21. Busick first argues that he invoked his right to remain silent by stating that he was not going to waive his rights. When an accused invokes his right to remain silent by indicating "in any manner, at any time prior to or during questioning, that he wishes to remain silent," police interrogation must cease. Miranda, 384 U.S. at 473, 86 S.Ct. 1602. Busick maintains that Palmer should have terminated the interview when Busick refused to waive his rights. This argument is without merit. A suspect invokes the light to remain silent by indicating in some way that he does not want to talk to authorities. Id. While Busick said he did not want to waive his rights, he never indicated in any way that he wanted to stop talking. Rather, as recognized by the trial court, he repeatedly stated that he wanted to talk to Palmer, even after careful questioning by Palmer to clarify Busick's intent. Busick never invoked his right to remain silent. Barnes v. Johnson, 160 F.3d 218, 225 (5th Cir.1998) (A suspect who responded "no" when asked whether he waived his right to remain silent but who had initiated the discussion with the police did not invoke the right, especially when the police then discerned the suspect's intent to talk by asking noncoercive clarifying questions.).
¶ 22. It is manifestly apparent from Busick's statement that he knowingly, intelligently and voluntarily waived his rights. An accused's mental abilities are but one factor to be considered by the trial court in determining the constitutionality of a rights waiver. Martin v. State, 871 So.2d 693, 699 (¶ 29) (Miss.2004). Busick offered no evidence beyond his own assertions of a mental disability that would have affected his ability to constitutionally waive his rights. As found by the trial court, Busick appeared to fully understand his lights during his conversation with Palmer. In the tape, Busick said that he understood his rights, understood what was going on, and was experienced with the criminal justice system. Further, after admitting that he understood his rights, he stated three times that he wanted to talk *857 to Palmer. Those statements constituted affirmative action demonstrating waiver. U.S. v. Collins, 40 F.3d 95, 99 (5th Cir. 1994). In the videotape, Busick stated that the police had made no threats or promises to him. Though Busick now maintains he only wanted to talk to Palmer about Dufour's misbehavior, in the videotape he never indicated in any way that he wished to limit the scope of the interview. See Jones v. State 461 So.2d 686, 699-700 (Miss.1984).
¶ 23. Busick's allegation that he could not knowingly, intelligently, and voluntarily waive his rights because the police did not tell him the confession was being videotaped is also without merit. Contrary to Busick's assertion, Palmer never deceived Busick because he never assured Busick that he was not being videotaped. Rather, he told Busick that no one was behind the two-way mirror, a fact not disproved by the presence of the video camera. Busick cites no authority for the proposition that concealed videotaping renders a confession inadmissible; Busick's cite to Gates v. Zant, 863 F.2d 1492, 1500 (11th Cir.1989) is inapposite because that case does not demand the accused be given notice that the police are videotaping a confession. Busick was informed that his statement could be used against him, and Miranda does not require that police inform the accused of the medium used to preserve a statement for use at trial. The trial court's finding that Busick understood his rights and waived them knowingly, intelligently, and voluntarily was fully supported by the record and was not manifest error or against the overwhelming weight of the evidence.
¶ 24. Busick also assails the voluntariness of his statements to police regarding the location of the contents of Kay Dufour's purse. He contends that he divulged the contents of the purse to police in response to a promise from Palmer "that it would help his case" and, therefore, the trial court erroneously admitted the contents into evidence. When the State makes a prima facie case of voluntariness and the accused testifies that a confession was induced by threats and promises, the State is required to produce all persons who are claimed to have coercively induced the confession. Abram v. State, 606 So.2d 1015, 1030 (Miss.1992). The trial court must determine voluntariness by deciding "whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." Porter v. State, 616 So.2d 899, 907-08 (Miss.1993). We will reverse the trial court's decision if the court applied an incorrect legal standard or if the court's fact-findings constituted manifest error or were against the overwhelming weight of the evidence. Balfour v. State, 598 So.2d 731, 742 (Miss.1992). At the suppression hearing, Palmer denied promising Busick anything in exchange for the contents of the purse. As the fact-finder, the trial court was entitled to credit the testimony of the arresting officer rather than that of Busick. Gavin v. State, 473 So.2d 952, 955 (Miss.1985). The trial court's finding that Busick voluntarily led police to the contents of the purse was not manifest error or against the overwhelming weight of the evidence. We close this analysis by observing that, even had the trial court erroneously admitted Busick's statement or the purse contents, the error was likely harmless because sufficient evidence of Busick's guilt was properly admitted at the trial, including Dufour's eyewitness testimony about the burglary, his identification of Busick as the perpetrator, and the fact that Kay Dufour's purse was found in Busick's possession.

*858 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT SETTING ASIDE THE JURY VERDICT WHICH WAS MANIFESTLY AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 25. The trial court denied Busick's motion for a new trial. On appeal, Busick argues the trial court erred because the jury's verdict finding him guilty of burglary of a dwelling was against the overwhelming weight of the evidence. A motion for a new trial challenges the weight of the evidence and is addressed to the trial court's sound discretion. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 26. The trial court should grant the motion only if "convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Id. We review the denial of a motion for a new trial for abuse of discretion, accepting as true all evidence supporting the verdict, and mindful that it is the role of the jury to weigh the testimony and to resolve conflicts in the evidence. Id.
¶ 27. Accepting the evidence supporting the verdict as true, the evidence against Busick was so strong that it is difficult to conceive how the jury reasonably could have acquitted Busick. Dufour identified Busick as the person who entered his house and ran away with his wife's purse. Dufour identified the clothes found in Busick's hotel room as the clothes the suspect was wearing. The car outside Busick's hotel room matched the description of the car driven by the suspect. Finally, the purse taken from the Dufours' house was in Busick's possession. The verdict was not against the overwhelming weight of the evidence, and trial court committed no error in denying Busick's motion for a new trial.

BUSICK'S PRO SE ISSUES
¶ 28. Busick has raised a litany of issues pro se, several of which we do not address because they are civil matters outside the scope of this criminal appeal, such as the complaint that the State has converted items of Busick's personal property.[1] We turn to Busick's remaining issues, which we have restated.

IV. THE STATE'S FAILURE TO PROVIDE BUSICK WITH ACCESS TO THE LAW LIBRARY VIOLATED HIS RIGHT OF ACCESS TO THE COURTS AND SELF-REPRESENTATION.
¶ 29. Busick represented himself pro se in conjunction with appointed standby counsel. Busick claims that, despite multiple requests, he was granted access to the law library only one time during his pre-trial incarceration and that the denial of access hampered his ability to prepare for trial. Busick moved for a new trial on this ground. The trial court denied the motion and found that Busick's appointed co-counsel was an adequate source for legal information.
¶ 30. "[L]aw library access is not a fundamental constitutional right afforded criminal defendants." Parisie v. State, 848 So.2d 880, 883-84 (¶ 9) (Miss.Ct. App.2002) (citing Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir.1996)). A prisoner, even one acting pro se, must be afforded "either access to the courts to prepare and file meaningful legal documents or adequate assistance from persons legally trained." Id. at (¶9, ¶ 11) (emphasis in *859 original). Busick had the assistance of his appointed counsel to advise him and to address all the matters which Busick could not handle. Because Busick's appointed counsel satisfied the requirement of meaningful access to the courts, this issue is without merit.
¶ 31. Related to this issue is Busick's contention that he did not knowingly and voluntarily waive his right to counsel because the trial court failed to fully inform him of the dangers of self-representation. This issue is without merit. The record shows that the trial court fully complied with Uniform Rule of Circuit and County Court Practice 8.05 by thoroughly warning Busick of the dangers of self-representation, after which Busick unequivocally stated that he desired to proceed pro se with standby appointed counsel. Then, the court held that Busick understood what he was doing and made the decision knowingly and voluntarily. URCCC 8.05; Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Moreover, we harbor substantial doubt that a waiver of appointed counsel was required because the magnitude of appointed counsel's participation throughout the proceedings evinced an arrangement of hybrid representation. Metcalf v. State, 629 So.2d 558, 565-66 (Miss.1993).

V. THE TRIAL COURT ERRONEOUSLY DENIED BUSICK'S REQUEST FOR SUPPLEMENTAL DISCOVERY AND MOTION FOR A CONTINUANCE.
¶ 32. Before the trial, Busick argued that the State had failed to fully respond to his discovery requests and, therefore, the trial court needed to order complete discovery and to allow Busick time to examine the evidence. He contends that some of the evidence was exculpatory and withheld by the State in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
¶ 33. The trial court denied Busick's requests. We review the trial court's evidentiary rulings for abuse of discretion. Brady established the rule that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 1196-97. The remedy for a Brady violation is a new trial. King v. State, 656 So.2d 1168, 1174 (Miss.1995). King adopted a four-part test used to determine whether there has been a Brady violation. Id. The test requires the defendant to prove:
(1) that the State possessed evidence favorable to the defendant (including impeachment evidence);
(2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence;
(3) that the prosecution suppressed the favorable evidence; and
(4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Id.
¶ 34. Busick argued that the State withheld exculpatory evidence of the floor plan of the Dufour home. Busick wanted the floor plan to impeach a photograph introduced by the State showing that Dufour could not have seen Busick take the purse from his vantage point in the bedroom. Busick denies any knowledge of the layout of the Dufour home and claims the floor plan evidence could have contradicted the photographic evidence. Busick's speculation of what the floor plan could have *860 shown falls substantially short of showing reasonable probability of a different out-come had the floor plan been made available to him.
¶ 35. Busick also wanted the name and address of the temporary grand jury foreman, E. Avery Rollins, so that he could find out whether Rollins worked for the FBI. The prosecutor testified that he believed that Rollins's father, not Rollins, worked for the FBI. Busick argued that Rollins did work for the FBI and his grand jury service was improper since Dufour also worked for the FBI.
¶ 36. The trial court held that, based on Southward v. State, 293 So.2d 343, 344 (Miss.1974), even if Rollins was an FBI agent, his grand jury service would not constitute grounds for quashing Busick's indictment. In Southward, the fact that a prosecuting witness's relative was a member of the grand jury was insufficient for quashing the indictment absent evidence that any member of the grand jury acted with malice, hatred, ill will, or fraud. The presence on the grand jury of someone who worked for the same law enforcement agency as the crime victim is a more attenuated relationship than that found insufficient in Southward. Busick was not entitled to discovery of information about Rollins, and this issue is without merit. See also URCCC 7.04.
¶ 37. Busick argues that the State failed to preserve fingerprint and other evidence that would have been exculpatory. This issue is procedurally barred because Busick fails to provide a citation to the record showing that he raised this issue in the lower court. Trollinger v. State, 748 So.2d 167, 171 (¶ 15) (Miss.Ct. App.1999). Notwithstanding the procedural bar, this issue is without merit. Brady "does not imply a prosecutor's duty to investigate  and come to know  information which the defendant would like to have but the government does not possess." Campbell v. State, 437 So.2d 3, 5 (Miss.1983).
¶ 38. Busick also argues that the trial court erroneously denied his motion for a continuance because the State failed to timely discover inculpatory photographs. "The granting or denial of a continuance rests within the sound discretion of the trial judge." Jackson v. State, 538 So.2d 1186, 1189 (Miss.1989). The appellant has the burden of showing that the denial of a continuance "resulted in substantial prejudice to his right to a fair opportunity to prepare and present his defense." Rinehart v. State, 883 So.2d 573, 575 (¶ 10) (Miss.2004). Busick has made no such showing. Busick and his counsel reviewed the photographs before the trial, and Busick had the opportunity to request discovery of impeachment evidence in the form of the floor plan. The trial court's denial of a continuance was a proper exercise of discretion.

VII. THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION TO AMEND THE INDICTMENT TO CHARGE BUSICK AS A HABITUAL OFFENDER.
¶ 39. Busick challenges the trial court's grant of the State's motion to amend the indictment. On August 20, 2002, approximately forty days before the trial, the State moved to amend Busick's indictment to charge him as a habitual offender. Busick opposed the motion on the ground that the State sought to amend the indictment as retaliation for Busick's civil rights action under 42 U.S.C.A. § 1983 against members of the district attorney's office and others.
¶ 40. At a hearing on the motion, Assistant District Attorney Mel Coxwell informed the court that his decision to *861 amend the indictment was entirely based upon Busick's criminal history and had nothing to do with Busick's § 1983 suit. Coxwell said he had been unaware of Busick's § 1983 suit when he filed the motion to amend. Busick argued that Coxwell actually had been aware of his § 1983 lawsuit because the District Attorney's office received notice of the suit two days before the indictment was amended. The trial court held that the State sought the amendment for proper purposes and allowed the State to amend the indictment to charge Busick as a habitual offender in accordance with URCCC 7.09.
¶ 41. Busick argues that the ruling was error because the amendment was motivated by prosecutorial vindictiveness induced by Busick's § 1983 suit. Busick believes the conclusion that the amendment was retaliatory should flow automatically from the fact that the prosecution was aware he had sued State attorneys in federal court. He submitted no other evidence of vindictiveness.
¶ 42. A criminal conviction may be reversed due to prosecutorial vindictiveness only if a presumption of vindictiveness is warranted. U.S. v. Goodwin, 457 U.S. 368, 381, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). For the presumption to arise, the evidence must establish a reasonable likelihood of vindictiveness. Because "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings," the presumption of prosecutorial vindictiveness applies "only where a reasonable likelihood of such exists." Id. at 380-81, 102 S.Ct. 2485. No presumption of vindictiveness arose from the motion to amend the indictment because there was absolutely no evidence that the Madison County District Attorney's office sought to punish Busick for his federal lawsuit rather than for his recidivist history. We observe that district attorneys enjoy absolute immunity for alleged civil rights actions under § 1983. Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir.1994). This issue is without merit.
¶ 43. Busick makes various new allegations on appeal supporting his retaliation theory, including an allegation that an assistant district attorney told him at his arraignment, "Busick, we're going to kill you." He also alleges that the State's decision to charge him as a habitual offender was an act of racial discrimination in violation of his constitutional right to equal protection of law. Busick waived these arguments by failing to raise them before the lower court. Fleming v. State, 604 So.2d 280, 292 (Miss.1992). Notwithstanding the waiver, we are unable to consider these arguments because they are factually unsupported the record. Tanner v. State, 764 So.2d 385, 402 (¶ 47) (Miss. 2000). Also unsupported by citations to the record are Busick's allegations that his conviction was the result of various acts of fraud, most of which we have already addressed in the context of his other arguments.

VI. THE TRIAL COURT ERRONEOUSLY ADMITTED EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS ADMITTED BY BUSICK IN HIS VIDEOTAPED STATEMENT.
¶ 44. Busick admitted to drug use during his statement to Lieutenant Palmer. Busick argues that the evidence of his drug use was inadmissible under Mississippi Rule of Evidence 404(b) or more prejudicial than probative under Rule 403. Busick raised this issue during post-trial motions. He never objected to the admission of the evidence on this ground as required by Rule 103. Therefore, this issue has not been preserved for appellate *862 review. Duplantis v. State, 644 So.2d 1235, 1247 (Miss.1994).

VII. THE TRIAL COURT ERRONEOUSLY DENIED BUSICK'S MOTION FOR A NEW TRIAL ON THE GROUND THAT BUSICK WAS MENTALLY INCAPACITATED DURING THE TRIAL.
¶ 45. Busick moved for a new trial, alleging that he had been mentally unfit during the trial. The trial court denied the motion. Busick argues that he suffered from bipolar disorder and that officials at the Madison County Detention Center withheld his medication, which "dilapidated his mental capacity on both days of trial."
¶ 46. A defendant must be mentally competent at all stages of the criminal process. Neal v. State, 687 So.2d 1180, 1183 (Miss.1996). The standard for competence at trial is "whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and `has a rational as well as factual understanding of the proceedings against him.'" Dunn v. State, 693 So.2d 1333, 1340 (Miss.1997) (quoting Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). When the trial court has found that the evidence did not show a probability that the defendant was incapable of making a rational defense, this Court will affirm unless the finding was against the overwhelming weight of the evidence. Laney v. State, 486 So.2d 1242, 1244-45 (Miss.1986).
¶ 47. The trial judge denied Busick's motion based upon his observation of Busick throughout the trial. The judge stated that, in his view, Busick had been very aware of what was going on because he participated actively in his defense by conferring with appointed counsel. Busick had been coherent. The court did not observe anything that would indicate that Busick lacked understanding of the process or lacked the ability to assist his appointed counsel. These findings were fully supported by the transcript of the proceedings. We cannot say the trial court's ruling was against the overwhelming weight of the evidence.

IX. THE TRIAL COURT ERRONEOUSLY DENIED BUSICK'S MOTION FOR AN APPEAL BOND.
¶ 48. The trial court denied Busick's motion for an appeal bond. Mississippi Code Annotated § 99-35-115(2)(a) (Rev.2000) provides that a person convicted of burglary is entitled to release pending appeal provided "the convict shows by clear and convincing evidence that the release of the convict would not constitute a special danger to any other person or to the community" and that conditions may be placed upon the release reasonably assuring the appearance of the convict when required. The grant or denial of post-conviction bail is within the discretion of the trial court. Id.
¶ 49. Busick argues that the trial court's denial of post-conviction bail erroneously relied upon evidence that he had no permanent place of residence. He claims the fact that the warrant for his arrest was issued based upon receipts found at his mother's house was proof by clear and convincing evidence that he permanently resided at his mother's house. The record shows that the trial court denied post-conviction bail to Busick primarily because the court considered Busick a danger to the community due to his criminal history. The denial of post-conviction bail to Busick was well within the trial court's discretion.

*863 X. THE ERRORS, TAKEN TOGETHER, COMBINE TO CREATE CUMULATIVE ERROR MANDATING REVERSAL.
¶ 50. Busick maintains that, even if no single error mandates our reversal of his conviction, the combined effect of all the errors warrants reversal. This issue is without merit. None of Busick's assignments of error are meritorious and, therefore, there is no basis for reversal for cumulative error. Coleman v. State, 697 So.2d 777, 787 (Miss.1997).
¶ 51. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Busick has filed a civil action in federal court concerning these matters.