636 So.2d 652 (1994)
Johnny Lewis RANKIN
v.
STATE of Mississippi.
No. 91-KA-0446.
Supreme Court of Mississippi.
March 24, 1994.
As Modified April 28, 1994.
*654 John S. Knowles, III, Brantley and Knowles, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PRATHER, Presiding Justice, for the court:

I. INTRODUCTION AND PROCEDURAL HISTORY
Johnny Lewis Rankin was indicted by the Yazoo County Grand Jury for possession of cocaine with intent to distribute. Following a trial on the merits, the jury returned a guilty verdict and Rankin was sentenced to twenty-five (25) years in the Mississippi Department of Corrections, with fifteen (15) years suspended on five (5) years good behavior, to run consecutive to cause No. 7056. A $10,000.00 fine was also imposed. Rankin subsequently filed a motion for new trial or in the alternative for judgment notwithstanding the verdict, which was overruled by the trial judge. Feeling aggrieved, Rankin perfected his appeal to this Court, requesting review of the following issues:
A. Whether giving the case to the jury at 7:08 p.m. was improper and prejudicial as it did not give the jury sufficient time to make an adequate, fair, and unhurried decision on this case; and
B. Whether the verdict of the jury was against the overwhelming weight of the credible evidence and was the result of bias, passion, or prejudice against the defendant.
After a thorough review of the law and the facts in the record before us, this Court is of the opinion that there is no merit to either of these assignments of error. However, a subsequently filed document raises an issue which warrants discussion.

II. THE FACTS
Stacy Brumfield, who had known Johnny "Catfish" Rankin for three or four years, was at Smitty's Stop and Shop on November 10, 1989, when an altercation ensued between Brumfield and Rankin. Brumfield saw that Rankin had a dark-handled pistol in the back of his pants, and said he threatened her with it. Brumfield ran into Smitty's and used the telephone to report the incident to police. Brumfield recalled Rankin was wearing a hooded khaki jacket or coat at the time of the incident, which covered his gun, and which she had seen him wearing on other occasions at Smitty's. The police directed Brumfield to the Sheriff's Department because this was within the county jurisdiction.
Deputy Jackson of the Yazoo County Sheriff's Department was off duty on November 10, 1989, but Deputy Gilmore asked Jackson to accompany him to Smitty's in response to Brumfield's complaint because Jackson knew Rankin and could identify him. When the deputies arrived at Smitty's[1] the crowd of about ten to twenty-five people dispersed. Jackson pointed out Rankin to Gilmore, describing Rankin as the man in the brown-tan jacket. Rankin was in Smitty's parking lot beside the guard rails. When Jackson pointed him out to Gilmore, Rankin took off his jacket, laid it on the guard rail, and sat on it.[2] Jackson and Gilmore then noticed the handgun in the small of Rankin's back. The Deputies asked Rankin to put his hands on the patrol car and arrested him for carrying a concealed weapon. Rankin was put in the back seat of the patrol car and his jacket was placed on the front seat before the deputies brought Rankin to the county jail.
Once at the jail, Jackson, in Gilmore's presence, searched Rankin's person and the pockets of his jacket. In the left coat pocket, Jackson found $654.00 cash and 112 rocks of *655 crack cocaine.[3] In Rankin's right front pant pocket, Jackson found $1,053.00 cash. Rankin was then placed under arrest for possession of cocaine with the intent to distribute.
Four witnesses testified, one equivocally, that Rankin was not wearing or carrying a coat on the day of his arrest.[4] Jimmy Fleming, Chief of Police in Yazoo City, had known Rankin "[q]uite a while." Fleming said Rankin owned a jacket identical to the one admitted into evidence at trial. Fleming remembered it because Rankin also had a matching hat, which he had worn with the jacket on several occasions, prompting Fleming to dub him "Sherlock Holmes."
Rankin said he had not worn a coat on November 10, 1989, and denied that the coat marked Exhibit 1 was his. According to Rankin, as soon as the officers arrived at Smitty's, before he knew why they were there, he voluntarily told them he had a gun.
Once at the station, Rankin said the officers searched the coat out of his presence. When they asked whether the money found in the coat belonged to him, Rankin said it did not, and denied ownership of the coat.[5] He also told the officers the rocks of cocaine were not his. Rankin said he had $1,700.00 or $1,800.00 on him, in his pant pocket, because he was planning to buy some supplies to repair his house and store.[6] Rankin said the cash in his pant pocket the day he was arrested came from a $1,900.00 cashier's check Rankin had obtained, then cashed on November 6, 1989, because the building supply company wouldn't take a cashier's check.

III. PRO SE MOTION

A. Procedural Posture
Eleven months after Rankin's brief was filed with this Court, he requested from the Clerk of this Court the trial transcript in this cause in order to prepare a supplemental appeal brief. Two months later, Rankin filed documents captioned motion for leave to proceed in trial court, motion for post-conviction collateral relief, petition for post-conviction collateral relief, and memorandum brief in support of his post-conviction petition.
Rankin's motion for leave to proceed in trial court was purportedly filed pursuant to Miss. Code Ann. § 99-39-27. His petition for post-conviction collateral relief asserts ineffective assistance of counsel, specifically counsel's failure to advocate Rankin's Fourth Amendment claim of illegal search and seizure and counsel's failure to file a timely suppression motion regarding the illegally obtained evidence. Rankin concluded his petition with a request that this Court set aside his conviction and sentence with a complete discharge. Rankin's memorandum brief explains that his claim of ineffective assistance of counsel is directed to his attorney's performance both at trial and on appeal.

B. Analysis
Rankin's pro se motion for post-conviction relief ("PCR") was prematurely filed with this Court as his direct appeal had not yet been disposed of by this Court. Martin v. State, 556 So.2d 357, 359 (Miss. 1990); Miss. Code Ann. § 99-39-7 (Supp. 1992). This Court could dismiss or deny Rankin's motion on this ground without prejudice, allowing him to institute another such action in the appropriate court at the appropriate time. Miss. Code Ann. § 99-39-27(9) (Supp. 1992). See also Martin, 556 So.2d at 360.
Another option is for this Court to first dispose of Rankin's direct appeal, then address his PCR action. But Miss. Code Ann. § 99-39-5(2) (Supp. 1992) requires that a motion for PCR be made "within three (3) years *656 after the time in which the prisoner's direct appeal is ruled upon by the supreme court of Mississippi." (Emphasis added) This brings us back to dismissal of Rankin's PCR action without prejudice, because prematurely filed.
In light of Rankin's letter to the Clerk of this Court, requesting his trial transcript in order to prepare a supplemental appeal brief, and in the interest of judicial economy, this Court considers Rankin's "PCR" action as a supplement to his brief on direct appeal. All information necessary to dispose of his claim as a direct appeal is available to this Court at this time; therefore, the issue presented in Rankin's pro se filings will be addressed by this Court. That issue is:
A. Whether Rankin's counsel was ineffective at trial and on direct appeal because:
1. Counsel failed to advocate Rankin's Fourth Amendment claim of illegal search and seizure; and
2. Counsel failed to file a timely suppression motion regarding the illegally obtained evidence.

IV. THE LAW

A. Whether Rankin's counsel was ineffective at trial and on direct appeal because counsel failed to advocate Rankin's Fourth Amendment claim of illegal search and seizure and because counsel failed to file a timely suppression motion regarding the illegally obtained evidence.

1. The Parties' Contentions
Rankin argues his counsel was ineffective at trial and on direct appeal because he failed to assert that Rankin's person and clothing were illegally searched and the evidence obtained as a result of this search was unlawfully seized. Rankin contends that only a Terry[7] search would have been proper at the time of his arrest, and that a frisk for weapons must have been necessary and reasonable. Since the officers went beyond the scope of a Terry search, the cash and cocaine were obtained illegally and should have been suppressed. Consequently, Rankin claims his counsel was ineffective at trial and on direct appeal because he failed to file a motion to suppress the illegally obtained evidence. Without such evidence, Rankin claims he would not have been convicted, therefore his deficient representation was substantially prejudicial. Rankin also argues that his attorney should have moved to suppress the jacket, as it had not been established that the jacket belonged to Rankin.

2. Analysis

a. Ineffective Assistance of Counsel
To prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), which this Court has adopted. Alexander v. State, 605 So.2d 1170, 1173 (Miss. 1992); Knight v. State, 577 So.2d 392, 394 (Miss. 1991); Barnes v. State, 577 So.2d 840, 841 (Miss. 1991); McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990); Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987), aff'd after remand, 544 So.2d 834 (1989); Stringer v. State, 454 So.2d 468, 476 (Miss. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). The Strickland test requires a showing that counsel's performance was sufficiently deficient to constitute prejudice to the defense. McQuarter, 574 So.2d at 687. The defendant has the burden of proof on both prongs. Id. A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists. McQuarter, 574 So.2d at 687; Waldrop, 506 So.2d at 275. The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992); Ahmad a/k/a Coleman v. State, 603 So.2d 843, 848 (Miss. 1992).
Viewed from the totality of the circumstances, this Court must determine whether counsel's performance was both deficient and prejudicial. Carney v. State, 525 So.2d 776, 780 (Miss. 1988); Waldrop, 506 So.2d at 275; Read v. State, 430 So.2d 832, *657 839 (Miss. 1983). Scrutiny of counsel's performance by this Court must be deferential. Ahmad, 603 So.2d at 848. If the defendant raises questions of fact regarding either deficiency of counsel's conduct or prejudice to the defense, he is entitled to an evidentiary hearing. Alexander, 605 So.2d at 1173. Where this Court determines defendant's counsel was constitutionally ineffective, the appropriate remedy is to reverse and remand for a new trial. Nicolaou, 612 So.2d at 1086.

b. Search and Seizure
The strictures of the Fourth Amendment are not violated when one under lawful custodial arrest is subjected to a full search of his person. U.S. v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). A search incident to a valid arrest is not limited to a Terry type search. Id., at 229, 94 S.Ct. at 474. The area within the arrestee's immediate control, from which he might obtain a weapon or where he may conceal evidence, may also be searched, consistent with the Fourth Amendment. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), rehearing denied, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). The personal effects in the arrestee's possession at the place of detention, which were subject to a search at the time and place of arrest, may later be searched and seized without a warrant at the place of detention. U.S. v. Edwards, 415 U.S. 800, 805-06, 94 S.Ct. 1234, 1238-39, 39 L.Ed.2d 771 (1974).[8]
"Containers" within the area of the arrestee's immediate control may also be searched incident to a lawful arrest. New York v. Belton, 453 U.S. 454, 462-63, 101 S.Ct. 2860, 2865-66, 69 L.Ed.2d 768 (1981), rehearing denied, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981). It is also reasonable in accord with the Fourth Amendment to search the personal effects in the possession of one lawfully arrested as part of a routine inventory procedure at the place of detention, incident to processing the arrestee. Illinois v. Lafayette, 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983), petition for writ of error coram nobis to vacate judgment denied, 468 U.S. 1213, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984). Justification for such inventory searches is found in the need to prevent theft or claims of theft of arrestees' property and to prevent arrestees from harming themselves or others. Id., 462 U.S. at 646, 103 S.Ct. at 2609.
Rankin was initially arrested for carrying a concealed weapon, which is a crime in this state. See Miss. Code Ann. § 97-37-1 (Supp. 1992). Incident to his lawful arrest, Rankin's person could have been searched by the officers while at Smitty's. Robinson, 414 U.S. at 235, 94 S.Ct. at 476. Clearly, the search of Rankin's person, though at the station rather than at the time and place of arrest, was reasonable within the confines of the Fourth Amendment. Edwards, 415 U.S. at 805-06, 94 S.Ct. at 1238-39. It follows that the evidence obtained as a result of this search, the cash from Rankin's pant pocket, was properly admitted into evidence. See Michigan v. DeFillippo, 443 U.S. 31, 35, 99 S.Ct. 2627, 2630, 61 L.Ed.2d 343 (1979). It is of no moment that the evidence obtained as a result of the search incident to Rankin's arrest for carrying a concealed weapon is not related to that charge, but created probable cause for a subsequent arrest on a wholly different charge. See Robinson, 414 U.S. 218, 94 S.Ct. 467 (Robinson was arrested for violation of the Motor Vehicle Code; search incident to this arrest yielded heroin; Robinson was subsequently convicted of a drug offense).
The search of Rankin's jacket and admission of the evidence obtained therefrom is more troubling. Unlike the situation in Edwards or Lafayette, Rankin was not wearing the jacket when he was arrested, nor was he wearing or carrying the jacket when he arrived at the station for processing.[9] The *658 jacket was, however, in the area within Rankin's immediate control at the time of arrest.
In Belton, the United States Supreme Court held that a jacket, found in the passenger compartment of a car where Belton had been a passenger before his arrest, could be searched incident to arrest because it was in the area within Belton's immediate control. Belton, 453 U.S. at 462-63, 101 S.Ct. at 2865-66. In fact, Belton was already out of the car and under arrest when the officers obtained the jacket. Following this reasoning, Rankin's jacket, which the officers saw him take off and place on the guard rail beside him, was properly searched incident to his arrest because it was in the area within Rankin's immediate control. If the search of Rankin's jacket was reasonable and permissible, incident to his lawful arrest, then the evidence obtained therefrom was admissible. DeFillippo, 443 U.S. at 35, 99 S.Ct. at 2630.

c. Conclusion
As both searches complained of were reasonable pursuant to the Fourth Amendment and the evidence obtained therefrom was properly admitted at trial, failure of Rankin's counsel to assert that Rankin's person and clothing were illegally searched and the evidence obtained as a result of this search was unlawfully seized is not deficient performance. Nor was his counsel deficient because he failed to file a motion to suppress this evidence. More specious is Rankin's allegation that his attorney should have moved to suppress the jacket, as it had not been established that the jacket belonged to Rankin. Both sides presented evidence as to whom the jacket belonged and by whom it was worn. This conflicting evidence presented a factual issue for the jury to resolve, but did not warrant suppression of the jacket. Regardless, admission of the jacket itself was not prejudicial to Rankin; admission of the evidence found in the jacket is the proper focus.
From the record on appeal, this Court concludes that Rankin did not show that his counsel was deficient to constitute prejudice to the defense, and therefore did not suffer from ineffective assistance of counsel. Accordingly, this Court reaches the merits of Rankin's claim on direct appeal and affirms.

V. CONCLUSION
Rankin's counsel was not ineffective at trial or on direct appeal. As the searches which yielded the cash and cocaine admitted at trial were incident to a lawful arrest and reasonable within the meaning of the Fourth Amendment, that Rankin's attorney failed to assert a claim of illegal search and seizure and failed to file a suppression motion regarding this evidence is not deficient performance. This Court affirms.
Conviction of possession of cocaine with intent to distribute and sentence of twenty-five years in the custody of the Mississippi Department of Corrections, with fifteen years suspended on five years good behavior, consecutive to cause #7056 and pay a fine of $10,000.00 and pay court costs affirmed.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Jackson was not in uniform; Gilmore was.
[2] At the preliminary hearing, Jackson said Rankin had moved to the right of the coat before sitting down.
[3] John Maddox, a forensic scientist, testified that he had tested the rocks and found they contained cocaine.
[4] The testimony of two of these witnesses, on matters other than whether Rankin was wearing a coat, conflicted with the testimony of the two deputies.
[5] When Rankin denied ownership of the coat on cross-examination, he was asked to and did try on the coat. The record does not reveal whether it fit him or not.
[6] Rankin said his cash was all in $100.00 bills; the cash found in the coat and pants, Exhibits 2 and 3, included some $20.00 bills. Although the cash in the two exhibits totals approximately $1,700.00, which is what Rankin said he had in his possession, he claimed the money taken from the jacket was not his because it was not all $100.00 bills.
[7] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[8] Edwards' clothes were seized not as part of a routine booking procedure, but in order to obtain evidence of the crime for which he had been arrested.
[9] Edwards was wearing, at the time of arrest, the clothes which were later seized and searched at the place of detention. Lafayette was in possession of the shoulder bag, which was searched, when being processed at the place of detention.