IRVING, J.,
for the Court.
¶ 1. A Marion County jury convicted Reginald Primas of receiving stolen property valued at more than $250, and the court sentenced Primas to serve five years in the custody of the Mississippi Department of Corrections. On appeal, Primas argues that (1) the trial court erred in not granting a judgment notwithstanding the verdict or, alternatively, a new trial; (2) the failure of his trial counsel to challenge the validity of the search warrant amounted to ineffective assistance of counsel; and (3) the failure of his trial counsel to offer a jury instruction on a lesser-included offense amounted to ineffective assistance of counsel.
¶ 2. We find no error requiring reversal; therefore, we affirm Primas’s conviction and sentence, without prejudice to his right to file a motion for post-conviction relief on the issue of ineffective assistance of counsel.
FACTS
¶ 3. On October 12, 2000, Brad Pittman reported that his cabin in the Goss area of Marion County had been burglarized. A Symphonic TV/VCR combination, RCA television, and RCA DSS satellite receiver were taken in the burglary. On November 17, 2000, Doug Barnes, an investigator with the Marion County Sheriffs Department, acting on information that he had gathered from various sources, arrested Brandon Hudson as a suspect in the burglary. Hudson gave a statement implicating himself, Nathan White, and Matthew Acosta in the burglary.[1] In the statement, Hudson stated the following:
I got out and walked in [Pittman’s cabin] and Nathan said hear [sic] grab this, so I did, and I said come on let’s go. I grab [sic] a wire. We got in the car and took it to Reggie Love [Reginald Pri-mas] in Hub and he gave Nathan some weed. So we went to Matthew’s. He drove a white car. Nathan said that he [Primas] was going to give him some more dope, but I quit hanging with them so I don’t know if they got any more. We got two TV’s and a satélite [sic].
*1097 Immediately after obtaining the written statement from Hudson, Investigator Barnes applied for and obtained a warrant to search Primas’s home and executed it the same day, all of this occurring approximately five weeks after the burglary. When Barnes executed the warrant, he found only the RCA DSS satellite receiver. The serial number on the receiver matched the serial number of the receiver that had been stolen from Pittman’s cabin.
¶ 4. At trial, Pittman testified that the RCA and Symphonic television sets were about a year old when they were stolen from his cabin, and were worth about $300 and $250, respectively. Pittman also testified that the satellite receiver was less than a year old and was valued at approximately $50. '
¶ 5. Jerry Taylor, owner of Big K Pawn Shop, was accepted by the court as an expert in the field of valuation of television sets and satellite receivers. Taylor testified that assuming the stolen items were in good condition and completely functional they would have had a value in October 2000 of more than $250..
¶ 6. Acosta testified that he, White, and Hudson committed the burglary of Pittman’s cabin and took a television, TV/VCR combination set, and a satellite receiver. Acosta further testified that they took the stolen items to Primas’s residence to trade them for marihuana. White corroborated Acosta’s testimony. Additionally, White testified that he went to Primas’s residence and told him that he and some friends had broken into a house and taken some items that they wanted to “trade for some dope.” According to White, Primas took the two télevision sets and the satellite receiver and gave him “some weed” in exchange.
¶ 7. The defense called Hudson, who corroborated the testimony of White and Acosta regarding the burglary, but denied that they went to Primas’s residence that night. Hudson testified that he had taken one of the television sets to his own house, where it remained until it stopped working about a month after the burglary. On cross-examination, Hudson acknowledged that he had given law enforcement authorities a written statement which he admitted going to Primas’s home after the burglary. However, Hudson said that he wanted to recant his former statement and tell the truth because he did not want to see an innocent man go to jail.
¶ 8. Primas testified that White brought only a satellite receiver to his residence and offered to sell it to him. According to Primas, he agreed to buy the receiver if it was compatible with his existing satellite system; however, the two were not compatible, and White never came back to retrieve the receiver. Primas denied that White told him' that the receiver was stolen or that he had given White marihuana in exchange for three items that were stolen from the cabin. Primas’s fiancée, Latisha Johnson, was at his house on the night that White came by with the receiver, and she corroborated Primas’s testimony.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Judgment Notivithstcmding the Verdict or New Trial

¶ 9. In his first .assignment of error, Primas argues that the court erred in refusing. to grant his motion for judgment notwithstanding the verdict or, alternatively, a new trial. He specifically challenges the legal sufficiency of the evidence upon which the jury’s verdict relied and argues that the jury’s verdict was against the overwhelming weight of the evidence.

(a) Sufficiency of the Evidence

¶ 10. A motion for judgment notwithstanding the verdict challenges the *1098 legal sufficiency of the evidence. Montana v. State, 822 So.2d 954, 967(¶58) (Miss.2002) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). “We will consider the evidence in the light most favorable to the State, giving the State the benefit of all favorable inference that may be reasonably drawn from the evidence.” Id. (citing Coleman v. State, 697 So.2d 777, 787-88 (Miss.1997)). “We are authorized to reverse only where the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict.” Id.
¶ 11. A review of the record does not reveal a lack of legally sufficient evidence that would entitle Primas to a judgment notwithstanding the verdict. We find the evidence sufficient to warrant the trial court’s refusal of Primas’s motion for judgment notwithstanding the verdict. Primas admits that White brought a satellite receiver to his house. It is undisputed that the satellite receiver discovered at Primas’s house was the same receiver stolen from Pittman’s cabin. Although the search of Primas’s house did not result in the recovery of the two televisions stolen from Pittman’s cabin, White and Acosta testified that they took the two televisions, along with the satellite receiver, to Primas’s house after the burglary. They both told law enforcement authorities that they exchanged the stolen items with Primas for some marihuana.
¶ 12. Primas argues that he did not knowingly receive- stolen property. ’ However, White testified that he went to Pri-mas’s residence and told him that he and some friends had broken into a house and taken some items that they wanted to “trade for some dope.” According to White, Primas took the two television sets and the satellite receiver and gave him “some weed” in exchange. Taylor, the State’s expert witness, testified to the value of the stolen items that Primas received.
¶ 13. Taken in the light most favorable to the State, we find that the evidence was sufficient to allow reasonable jurors to find in favor of Primas’s guilt. Therefore, we find that the trial court did not error in denying Primas’s motion for judgment notwithstanding the verdict.

(b) Weight of the Evidence

¶ 14. “In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Montana, 822 So.2d at 967(¶ 61) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will we disturb it on appeal.” Id.
¶ 15. Although the evidence at trial was conflicting, we find that the verdict was not contrary to the overwhelming weight of the evidence. There was evidence to support the jury’s verdict and its rejection of Primas’s version of what happened on the night Pittman’s cabin was burglarized. Pittman testified as to items stolen from his cabin and the value of each item. Taylor corroborated Pittman’s testimony as to the valuation. Both Acosta and White testified that they took the stolen items to Primas’s house and traded them for some marihuana. Although Hudson . later recanted his statement implicating Primas as receiving stolen property, he initially gave law enforcement authorities a statement incriminating Primas.
¶ 16. “The jury is charged with the responsibility of weighing and considering *1099 the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed.” McClain, 625 So.2d at 781 (citing Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991)). The jury was presented with two versions of what happened, and found the State’s version more credible. Accordingly, allowing the verdict to stand does not constitute an unconscionable injustice. Therefore, we find that the trial court did not abuse its discretion in denying Primas’s motion for a new trial.

(2) Ineffective Assistance of Counsel

¶ 17. In his next two assignments of error, Primas argues that his trial counsel rendered ineffective assistance of counsel. He specifically contends that his counsel was ineffective in failing to challenge the validity of the search warrant for his residence and in failing to tender a lesser-included offense jury instruction.
¶ 18. The standard of review for ineffective assistance of counsel comes from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland promulgated a two-prong test which was adopted by the Mississippi Supreme Court in Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The Strickland test requires that Primas show: (1) that his counsel’s performance was deficient and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Accordingly, Primas must show that “but for his attorney’s errors, there is a reasonable probability that he would have received a different result in the trial court.” Rankin, 636 So.2d at 656 (citing Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992)).

(a) Failure to move for suppression of the evidence

¶ 19. Primas’s counsel’s failure to move to suppress the evidence of the search guaranteed the admission of damaging evidence against Primas.[2] Therefore, the question is: if Primas’s counsel had moved to suppress the evidence of the search, is there a reasonable probability that the outcome of the case would have been different? Obviously, the answer depends upon whether the motion would have been successful.
¶ 20. In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established a “totality of the circumstances” standard for determining the existence of probable cause to issue a search warrant.[3] The application of the standard requires the magistrate to “make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Gates, 462 U.S. at 238, 103 S.Ct. 2317. In reviewing the magistrate’s finding, “our task as a reviewing court is to ensure that there was a substantial basis for the magistrate’s determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss.1987) (citing Massachusetts v. Upton, 466 U.S. 727, 732-33, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984)).
*1100 ¶ 21. We do not have the affidavit containing the underlying facts and circumstances given to the justice court judge who issued the search warrant. However, we do know from Investigator Barnes’s testimony that what he presented to the issuing judge was based on the information contained in Hudson’s written statement.[4] Therefore, we look again at that statement. In that statement, Hudson said:
I got out and walked in [Pittman’s cabin] and Nathan said hear [sic] grab this, so I did, and I said come on let’s go. I grab [sic] a wire. We got in the car and took it to Reggie Love [Reginald Pri-mas] in Hub and he gave Nathan some weed. So we went to Matthew’s. He drove a white car. Nathan said that he [Primas] was going to give him some more dope, but I quit hanging with them so I don’t know if they got any more. We got two TV’s and a satélite [sic].
¶ 22. Of paramount importance is the fact that Hudson never said that he and his codefendants took either the TV’s or the satellite to Primas. Hudson said he grabbed a wire and they “took it to Reggie Love.” In fact, Hudson did not even mention the satellite until the end of the statement, and it appears that his inclusion of the information at that point was more of an afterthought than a focused recitation of the items taken in the burglary. Regardless, the crucial point here is that Hudson’s statement contains no information as to what was done with the two TV?s and satellite. Therefore, based on Hudson’s statement alone, it was impossible for Investigator Barnes to include, in his affidavit to the issuing judge, information from which the judge could conclude that there was a fair probability that the satellite would be found at Primas’s residence. It does not matter that the satellite was later discovered at Primas’s residence. It may be that it was later taken there by Hudson’s codefendants, White and Acosta, after Hudson stopped “hanging out” with them, or Primas’s version of how he acquired possession of it could be accurate. In either case, the fact remains that Investigator Barnes could not have related White and Acosta’s version of what happened because they were not arrested until after the search warrant had been issued and executed.
¶ 23. While by no means outcome-determinative, we think the time interval between the date of the burglary and the date of Hudson’s statement (approximately five weeks) is also significant on the question of whether the issuing judge had enough information to make “a practical, common-sense decision” that there was a reasonably fair probability that the fruit of the burglary would be found at Primas’s residence. In this regard, we note that there is nothing in Hudson’s statement shedding light on the reasons for taking to Primas whatever it was that they took. If Primas was involved in fencing stolen goods, it might not be reasonable to conclude that he would still have the fruit of the burglary five weeks later. On the other hand, if Primas was just an ordinary person seeking to acquire some of the comforts of life at illegal bargain rates, it might be reasonable to conclude that whatever he acquired would still be in his possession. In either case, it was incumbent upon Investigator Barnes to present sufficient information to the issuing judge for the judge to make the proper determination.
*1101 ¶24. As noted earlier in this opinion, we do not have a copy of the statement of underlying facts and circumstances presented to the justice court judge who issued the warrant. Therefore, we do not have sufficient information to properly evaluate whether a motion to suppress would likely have been granted. In other words, the record does not affirmatively indicate that Primas was denied ineffective assistance because of the failure of his trial counsel to challenge the validity of the search warrant. Therefore, the proper course is to affirm the judgment of the trial court, -without prejudice to Primas’s “right via proper post-conviction proceedings to litigate fully” his claim that he was denied effective assistance of counsel. Read v. State, 430 So.2d 832, 837 (Miss.1983).

(b) Lesser-ineluded offense instruction

¶ 25. We now address Primas’s other claim that his trial counsel was ineffective for failing to present an instruction which would have allowed to jury to find him guilty of receiving stolen property valued at less than $250. The State presented evidence that the accumulative value of the three items taken in the burglary was more than $250. The only evidence as to the value of the receiver came from the victim, Pittman, who testified that the receiver was worth approximately $50.[5] The receiver was the only one of the stolen items that was found in Primas’s possession, and he gave an explanation of how he came into possession of it.[6]
¶ 26. Since it was Primas’s contention that he did not know that the receiver was stolen and had not given White marihuana in exchange for it, it seems a reasonable decision - by trial counsel not to seek an instruction which would have allowed the jury, to find Primas guilty of an offense that Primas insisted he did not commit, even though it was a lesser offense than the one for which he was being tried. Moreover, since Primas was found in possession of the receiver, which admittedly was taken along with other items during the burglary, trial counsel may have made the strategic decision not to ask for an instruction tailored to guilt respecting the receiver out of fear that focusing on the receiver also risked highlighting the fact that the receiver and the other items were inevitably linked. Therefore, if he was guilty of receiving the satellite receiver, he was probably guilty of receiving the other items, but that he had gotten rid of them in the interim. In other words, counsel may have reasoned that submission of an instruction regarding misdemeanor receipt of stolen property may have had the opposite of the desired effect. Such trial strategy will seldom, if ever, constitute ineffective assistance of counsel because “a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
*1102 ¶ 27. In summary, we affirm the judgment of the trial court. However, this affirmance is without prejudice to Primas to litigate the ineffective assistance of counsel claim through a proper post-conviction relief motion, if he so desires.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF RECEIVING STOLEN PROPERTY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO' MARION COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, BARNES AND ISHEE CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY.

. White and Acosta were arrested the following day.

. Although the satellite receiver was recovered from Primas’s residence, it does not appear that it was admitted into evidence. However, Investigator Barnes testified as to its recovery from Primas’s residence. A successful challenge to the search would have prevented any testimony that the receiver was found at Primas's residence.

. The Mississippi Supreme Court adopted this standard in Lee v. State, 435 So.2d 674, 676 (Miss.1983).

. We do not address the question of the veracity of the informant (Hudson) and the basis for his knowledge. It is sufficient for us that he was a participant in the burglary. We see no reason why he would fabricate a story implicating himself in a serious crime. Therefore, in our discussion here, we assume sufficient veracity of the informant.

. Receipt of stolen property valued at less than $250 is a misdemeanor, whereas receipt of stolen property valued at more than $250 is a felony.

. Primas testified that White brought only a satellite receiver to Primas's residence and offered to sell it to him. According to Primas, he agreed to buy the receiver if it was compatible with his existing satellite system; however, it was not compatible and White never came back to retrieve it. Primas denied that White told him that the satellite receiver was stolen or that he had given White marihuana in exchange for three items that were stolen from the cabin.