MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. A jury sitting in the Jackson County Circuit Court convicted Cleveland Palmer of murder. The trial judge sentenced Palmer to life in the custody of the Mississippi Department of Corrections. On appeal, Palmer claims he received ineffective assistance from his trial counsel. Specifically, he contends: (1) plain error resulted from his attorney’s failure to object to inadmissible evidence, and (2) his lawyer
 
 *1209
 
 did not adequately prepare to defend his case.
 

 ¶ 2. Finding no obvious deficient performance on the part of Palmer’s trial counsel, we affirm his conviction and sentence.
 

 FACTS
 

 ¶ 3. Palmer and his wife Felicia lived in the Oakwood Apartment Complex in Pas-cagoula, Mississippi. On October 26, 2007, Felicia reported to apartment management that them neighbor, Glenn Manning, had been stealing electricity from the complex’s electrical box. Manning later confronted Felicia about turning him in and called her a derogatory name. Felicia became angry and contacted her husband, Palmer.
 

 ¶4. Palmer testified that he arrived home between 5:00 and 7:00 p.m. that night and confronted Manning. An argument ensued when Manning refused to apologize to Felicia. A nearby neighbor, Aaron Stewart, testified that Sammy Tims left in one of Palmer’s cars and returned with a “small shotgun.” Stewart later saw Palmer with the same weapon.
 

 ¶ 5. Manning left the area but returned to the apartment complex around 9:00 p.m. Manning and Palmer again argued with one another. When Manning tried to return to his apartment, Palmer armed himself with a sawed-off shotgun and a stick. He then followed Manning into Manning’s apartment. The details surrounding the ensuing events vary. However, it is undisputed that the shotgun discharged, and Manning died as a result of a gunshot wound to his abdomen.
 

 ¶ 6. After the shooting, Palmer ran from Manning’s apartment and threw the shotgun into a nearby river. Felicia remained at the scene and informed the police that she believed her husband had accidentally shot Manning during a struggle. Later that night, Felicia and Palmer went to the police station. There, Palmer told the police he did not intend to shoot Manning. He instead claimed Manning pulled a shotgun on him, and the two struggled over the weapon, which accidentally fired, killing Manning.
 

 ¶ 7. Officers investigating the shooting learned two men were present when Palmer entered Manning’s apartment. One man, known only as “Pops,” was not located, but the police did locate Rodney Cole. Cole told police that a black male entered Manning’s apartment with a gun and told Cole and Pops to leave.
 

 ¶ 8. Though Palmer initially claimed Manning had pulled a shotgun on him, Palmer later admitted this was false. Palmer claimed he had lied about the shotgun because he feared his wife’s probation would be revoked if law enforcement learned Palmer possessed the weapon. Palmer admitted in a third statement to the police and at trial that he did indeed arm himself with a shotgun before confronting Manning.
 

 ¶ 9. Though Palmer’s stories changed, he maintained the shooting was an accident and that he only meant to beat Manning with the stick. He claims he brought the shotgun along because he feared Manning had a gun in his apartment. Palmer testified that, once inside Manning’s bedroom, he threatened to whip Manning’s butt with the stick unless he apologized to his wife. According to Palmer, Manning refused to apologize, so he struck him with the stick. At this point, Palmer claimed Manning grabbed the shotgun, and the two struggled over the weapon. Palmer testified that the gun discharged when the two men fell to the floor. He then claimed he panicked, fled the apartment and ditched the gun in a nearby river.
 

 
 *1210
 
 ¶ 10. Prosecutors proposed a different version. The State offered testimony about Palmer’s conflicting statements and initial falsehoods. It also attempted to contradict Palmer’s story that he dropped his stick in Manning’s bedroom prior to the struggle. Additionally, forensic pathologist Dr. Paul McGarry testified that heavy black soot found on Manning’s body evidenced a contact wound. According to Dr. McGarry, this meant the gun’s barrel was pressed against Manning when fired. The State also maintained the angle of the wound was inconsistent with a struggle. Further, Dr. McGarry testified Manning’s crippled left hand could not have grasped or wrestled the gun from Palmer.
 

 ¶ 11. The jury convicted Palmer of murder, and the circuit court denied his motion for a new trial.
 

 DISCUSSION
 

 ¶ 12. Palmer does not attack the sufficiency or weight of the evidence underlying his conviction, nor does he contest the expert testimony supporting it. Instead, he claims ineffective assistance of counsel based on three instances of inaction by his trial attorney. The first alleged error stems from his defense counsel’s failure to object to an investigating officer’s testimony. The second results from his attorney’s failure to object to the admission of one of Palmer’s videotaped interviews. Palmer’s final claim of ineffective assistance of counsel stems from his attorney’s failure to review physical evidence.
 

 ¶ 13. To prevail on a claim of ineffectiveness of counsel, Palmer must demonstrate his counsel’s performance was both “[1] deficient and [2] that the deficiency prejudiced the defense of the case.”
 
 Burnside v. State,
 
 882 So.2d 212, 216 (¶ 20) (Miss.2004) (quoting
 
 Burns v. State,
 
 813 So.2d 668, 673 (¶ 14) (Miss.2001));
 
 see also Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that an attorney’s performance falls within the wide range of reasonable professional assistance.
 
 Rankin v. State,
 
 636 So.2d 652, 656 (Miss.1994). To establish prejudice, Palmer must demonstrate that, but for his attorney’s errors, there is a reasonable probability the outcome of his trial would be different.
 
 Id.
 

 I. Failure to Object
 

 A. Officer Jackie Trussell’s Testimony
 

 ¶ 14. Palmer first claims his attorney’s failure to object to certain testimony was deficient and prejudiced his defense. Palmer specifically contends statements made to Officer Jackie Trussed. by Felicia and Cole were inadmissible hearsay. He alleges their admissions violated the Confrontation Clause and urges this Court to find plain error.
 

 ¶ 15. Under the plain-error doctrine, appellate courts can address obvious error not properly raised by the defendant on appeal that affects a defendant’s fundamental, substantive rights.
 
 Neal v. State,
 
 15 So.3d 388, 403 (¶ 32) (Miss.2009) (citing
 
 Smith v. State,
 
 986 So.2d 290, 294 (¶ 10) (Miss.2008)). “The plain[-]error doctrine has a two-part test which requires: (i) an error at the trial level and (ii) such an error resulted in a manifest miscarriage of justice.”
 
 Stephens v. State,
 
 911 So.2d 424, 432 (¶ 19) (Miss.2005) (citing
 
 Gray v. State,
 
 549 So.2d 1316, 1321 (Miss.1989)). The Confrontation Clause provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]” U.S. Const, amend. VI. The Mississippi Supreme Court has held, however, that in some instances a violation of a defendant’s right to confront witnesses may be deemed harmless error.
 
 Smith,
 
 986 So.2d at 302 (¶ 37);
 
 see also Bynum v. State,
 
 929 So.2d 312, 314-15 (¶ 6) (Miss.2006) (finding the
 
 *1211
 
 trial court’s error in admitting the co-defendant’s statement was harmless);
 
 Clark v. State,
 
 891 So.2d 136, 142 (¶ 30) (Miss.2004) (finding admission of statements made by a non-testifying accomplice in violation of the Confrontation Clause was harmless error).
 

 ¶ 16. At trial, Officer Trussell testified that after responding to the shooting, Felicia told him: “she thought her husband ... shot [Manning].... They got into a struggle over a gun, and the gun went off and [Manning] was shot.”
 

 ¶ 17. We agree with Palmer that Felicia’s alleged statement to Officer Trus-sell is hearsay and is, thus, inadmissible.
 
 See
 
 M.R.E. 801 and 802. Nevertheless, it directly supports Palmer’s version of the incident and his characterization that the shooting was an accident. Because Palmer is unable to show resulting prejudice, the error was at most harmless, and we do not find Palmer’s attorney ineffective for failing to object.
 

 ¶ 18. Next, Palmer complains about a statement Cole allegedly made to Officer Trussell. Officer Trussell testified that Cole told him he saw a black man enter Manning’s room carrying a gun. The man pointed the gun at Manning, told Manning “I got your motherf — king a-s now,” and then he told Cole and Pops to get out.
 

 1Í19. While this testimony is hearsay, Palmer’s attorney did not object to its admission. The decision of whether to “ ‘make certain objections fall[s] within the ambit of trial strategy' and cannot give rise to an ineffective[-]assistance[-]of[-]counsel claim.”
 
 Jackson v. State,
 
 815 So.2d 1196, 1200 (¶ 8) (Miss.2002) (quoting
 
 Cole v. State,
 
 666 So.2d 767, 777 (Miss.1995)). In assessing whether an attorney’s representation meets constitutional standards, our supreme court has reasoned:
 

 Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.
 

 Mohr v. State,
 
 584 So.2d 426, 430 (Miss.1991) (internal citation omitted) (quoting
 
 Lambert v. State,
 
 462 So.2d 308, 316 (Miss.1984)).
 

 ¶20. Officer Trussell did not testify that Cole identified Palmer as the man with the shotgun. Also, Cole’s alleged statement did not contradict Palmer’s testimony that he entered the apartment armed with a shotgun. In fact, it is quite similar to Palmer’s admission that when he entered Manning’s apartment, he told him he was tired of “y’all F-ing with me,” and that he was going to “beat [Manning’s] as.” The difference, though, is that Palmer did not mention pointing the gun at Manning and did not recall anyone else in Manning’s apartment.
 

 ¶ 21. We are instructed to assess the totality of the circumstances in determining whether Palmer’s counsel’s assistance was effective.
 
 Wiley v. State,
 
 750 So.2d 1193, 1199 (¶ 11) (Miss.1999). Based on the circumstances before us, we do not find the admission of Officer Trussell’s testimony creates a miscarriage of justice. We certainly cannot say that absent the exclusion of Officer Trussell’s testimony, the jury would have reached a different outcome.
 
 See Rankin,
 
 636 So.2d at 656.
 

 ¶ 22. The State’s case did not depend solely on Officer Trussell’s testimony. Palmer testified he armed himself with the
 
 *1212
 
 sawed-off shotgun before entering Manning’s apartment. The State also offered several witnesses placing Palmer in possession of the firearm. In addition, the jury heard evidence of Palmer’s initial false exculpatory statement to law enforcement that Manning was the aggressor with the shotgun. Further, expert testimony contradicted Palmer’s version of the events leading to Manning’s death. And Palmer fled from the apartment after the shooting and hid the weapon. Our supreme court has long instructed that evidence of flight is probative of guilt or guilty knowledge.
 
 See Brown v. State,
 
 690 So.2d 276, 294 (Miss.1996);
 
 Lee v. State,
 
 457 So.2d 920, 923 (Miss.1984).
 

 ¶ 23. Due to the overwhelming evidence of Palmer’s guilt, we find any errors resulting from the admission of these two statements harmless. Thus, Palmer’s attorney was not deficient for failing to object to the complained of testimony.
 

 B. The Third Interview
 

 ¶ 24. The State introduced three videotaped interviews of Palmer. Palmer takes issue with his attorney’s failure to object to the introduction of his third statement to the police. He contends he did not voluntarily waive his Sixth Amendment right to counsel before this interview and that his attorney should have attempted to exclude the video. Alternatively, he contends that if any waiver did occur, it was limited in scope to issues surrounding his wife’s arrest.
 

 ¶ 25. “A statement by the accused is admissible if the accused was given the
 
 Miranda
 
 warnings, and then knowingly, intelligently and voluntarily waived the rights.”
 
 Prater v. State,
 
 18 So.3d 884, 893 (¶ 34) (Miss.Ct.App.2009) (quoting
 
 Busick v. State,
 
 906 So.2d 846, 855 (¶ 16) (Miss.Ct.App.2005)).
 

 ¶26. Palmer signed a waiver of his
 
 Miranda
 
 rights prior to engaging in his third conversation with the police.
 
 See Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is also important that Palmer initiated contact with the officers. Though Palmer’s initial concern dealt with his wife’s arrest, he made clear he also wished to speak generally about his case. He also maintained he understood his
 
 Miranda
 
 rights. Further, Palmer asked the officers if he was free to end the interview at any time, and the officers made clear that he had the right to terminate the interview at any time. They also advised Palmer he was free to refuse to answer any questions.
 

 ¶ 27. Though Palmer had appointed counsel, he claims he was unable to discuss his case with his attorney prior to the interview and that other public defenders were unavailable. Palmer relies on Justice Stevens’s recent dissent in
 
 Montejo v. Louisiana,
 
 — U.S. -, 129 S.Ct. 2079, 2094, 173 L.Ed.2d 955 (2009) (Stevens, J., dissenting), to support his invalid waiver argument.
 

 ¶ 28. We first point out that Justice Stevens’s dissent is not controlling law. But more importantly,
 
 Montejo
 
 dealt with a police-initiated interview following appointment of counsel. Here, Palmer, not the police, initiated the interview. Thus, we find
 
 Nelson v. State,
 
 10 So.3d 898 (Miss.2009), more applicable. In
 
 Nelson,
 
 our supreme court dealt with a similar Sixth Amendment waiver issue and reiterated:
 

 Nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will.
 

 Nelson,
 
 10 So.3d at 911 (¶ 55) (quoting
 
 Mettetal v. State,
 
 602 So.2d 864, 868 (Miss.
 
 *1213
 
 1992));
 
 see also Hunter v. State,
 
 684 So.2d 625, 632 (Miss.1996) (“The law is well established that an accused person can waive his right to counsel by initiating conversation with law enforcement.”).
 
 Nelson
 
 falls squarely in line with the United States Supreme Court’s holding in
 
 Montejo.
 
 These two cases notwithstanding, Palmer’s limited waiver argument is not supported by the record.
 

 ¶ 29. Thus, we find Palmer knowingly, intelligently, and voluntarily waived his rights to counsel prior to the third interview. Because we find no error in the introduction of the videotape of this interview, his trial attorney was not ineffective for failing to object to its admission.
 

 II. Physical Evidence
 

 ¶ 30. Palmer’s next claim stems from his attorney’s failure to inspect physical evidence possessed by the State. We point out that Palmer does not contend he was depi’ived of the opportunity to view the stick and shotgun. Nor does he argue his attorney’s inaction prejudiced his defense. Rather, he claims his attorney was constitutionally ineffective for merely failing to inspect the evidence.
 

 ¶ 31. “The duty to investigate and prepare is not limitless[.]”
 
 Thorson v. State,
 
 994 So.2d 707, 719 (¶ 31) (Miss.2007) (quoting
 
 Brown v. State,
 
 798 So.2d 481, 496 (¶ 22) (Miss.2001)). And criminal defense attorneys are “not required to pursue every path until it bears fruit or until all conceivable hope withers.”
 
 Id.
 
 (quoting
 
 Brown,
 
 798 So.2d at 496 (¶ 22)).
 

 ¶ 32. Palmer admitted carrying the stick and shotgun. He even led investigators to the site where he disposed of the shotgun. Palmer’s entire defense was based on his theory of an accidental shooting, and he fails to demonstrate how the outcome of his trial would have differed had his attorney inspected these items. Accordingly, this issue is without merit.
 

 ¶ 33. Seeing no constitutionally deficient performance by trial counsel, we affirm Palmer’s conviction and sentence.
 

 ¶ 34. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.