# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI

### NO. 2000-KA-00328-COA

**KEITH MORRIS A/K/A KEITH LAMONT MORRIS**            **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                            **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 02/17/2000 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | BUSINESS BURGLARY-HABITUAL OFFENDER: COUNT I, SENTENCED TO LIFE IMPRISONMENT IN THE MDOC, WITHOUT PAROLE, SUSPENSION OR REDUCTION OF SENTENCE; |
| | COUNT II, SENTENCED TO LIFE IMPRISONMENT IN THE MDOC, WITHOUT PAROLE, SUSPENSION OR REDUCTION OF SENTENCE. |
| DISPOSITION: | AFFIRMED - 8/7/01 |
| MOTION FOR REHEARING FILED: | 9/4/2001; denied 10/30/2001 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 11/20/2001 |

BEFORE KING, P.J., LEE, AND CHANDLER, JJ.

CHANDLER, J., FOR THE COURT:

¶1. Keith Morris was convicted by a jury of two counts of business burglary and the Scott County Circuit Court sentenced him as a habitual offender to two life sentences. Aggrieved by his convictions, Morris cites the following issues on appeal: (1) the trial court erred in denying his motion to suppress his confession and (2) the trial court should have granted a mistrial. Finding no error, we affirm.

## FACTS

¶2. Keith Morris walked into the Morton Police Department seeking help for his drug addiction. He was

instructed to seek help from the chancery clerk's office. About one hour later, Morris returned to the police department and informed Investigator Mack Adcox that he wanted to confess to some burglaries. Adcox read Morris his rights and Morris signed a waiver of rights form. Morris then told Adcox that he had burglarized two businesses that were located in the same building. Morris gave a detailed description of how he gained access to the businesses, and thoroughly described the items he stole. Adcox committed Morris's statement to paper and Morris read the statement and signed it. Officer Kenny Chipley was present when Morris gave his statement and he witnessed Morris read and sign the statement.

¶3. In his statement, Morris said that he went to an abandoned building behind an auto shop and entered through a boarded-up door. He removed a coat from one of the cars in the auto shop. He then entered the office and took a radio and some change. About half an hour later, Morris returned and, with a jack-handle, broke both windows of an adjoining business. He took $200 from the business. Morris gave the coat and radio to Gregory Baptiste, his one-time roommate. Morris was arrested and indicted on two counts of business burglary.

¶4. Morris challenged the voluntariness of his statement. In a suppression hearing conducted outside the jury's presence, Morris claimed that he did not burglarize the two businesses. He stated that he visited the police department because he needed help for his drug problem and he needed a place to stay because he was homeless. Morris claimed that he had ingested $150-worth of crack cocaine about one hour before his first visit to the police department. After the police sent him to the chancery clerk's office, Morris stated that he sat on some outside steps to decide where he would spend the night.

¶5. About one hour after his first visit, Morris returned to the police department and told Investigator Adcox: "I want to confess to some burglaries in your town." Adcox read Morris his rights and Morris waived his rights in writing. Morris testified that he did not recall Adcox informing him of his rights; however, he admitted that he signed the waiver form. Morris admitted that he gave the police the information contained in his statement; he claimed, however, that his statement was inaccurate because he did not commit the crimes. He explained that he made the statement because he was high on drugs and wanted a place to spend the night.

¶6. Both Adcox and Chipley testified in the suppression hearing that Morris did not appear drunk or high when he gave his statement. The circuit judge, noting that two hours had lapsed between the time that Morris allegedly ingested the drugs and the time that he gave his statement, ruled that Morris's confession was voluntary and denied the motion to suppress. The jury convicted Morris on both counts of burglary. Since Morris was a habitual offender, the trial judge sentenced him to two life sentences.

## LAW AND ANALYSIS

## I. DID THE TRIAL COURT ERR IN DENYING THE MOTION TO SUPPRESS?

¶7. Morris argues that the cocaine he consumed before he gave his statement to the police impaired his judgment and rendered his confession involuntary. He argues that the trial court erred when it failed to suppress his statement. Officers Adcox and Chipley testified that Morris did not exhibit any signs that he was under the influence of intoxicants. Further, Morris conversed intelligently with the officers. The State argues that under these circumstances, the trial judge correctly overruled Morris's motion to suppress.

¶8. The trial court's determination that Morris's confession was admissible was a finding of fact which this

Court cannot disturb unless the trial court committed manifest error, applied an incorrect legal standard, or the decision was contrary to the overwhelming weight of the evidence. *Wright v. State*, 730 So. 2d 1106 (¶11) (Miss. 1998). The trial court must look at the totality of the circumstances in making the factual inquiry into the voluntariness of a statement or confession. *O'Halloran v. State*, 731 So. 2d 565 (¶18) (Miss. 1999). "'The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice.'" *Herring v. State*, 691 So. 2d 948, 956 (Miss. 1997) (quoting *Porter v. State*, 616 So. 2d 899, 907-08 (Miss. 1993)). The defendant bears a heavy burden in attempting to reverse a trial court's decision that a confession is admissible. *Smith v. State*, 737 So. 2d 377 (¶11) (Miss. Ct. App. 1998).

¶9. When a defendant challenges the voluntariness of his statement, the trial court must hold an evidentiary hearing outside the jury's presence to determine the admissibility of the confession. *Millsap v. State*, 767 So. 2d 286 (¶14) (Miss. Ct. App. 2000). The State must prove the voluntariness of the statement beyond a reasonable doubt. *Id.* The State establishes a *prima facie* case of voluntariness when the officer, or other person having knowledge of the facts, testifies that "the confession was voluntarily made without any threats, coercion, or offer of reward." *Id.* When the State establishes its *prima facie* case of voluntariness, the defendant must then rebut the State's assertion of voluntariness. *Sykes v. State*, 749 So. 2d 239 (¶15) (Miss. Ct. App. 1999). A defendant's mental condition will not itself render a confession inadmissible; indeed, it is "but one factor to consider among the totality of the circumstances of a confession and interrogation." *Kircher v. State*, 753 So. 2d 1017 (¶37) (Miss. 1999). Intoxication or illness will not automatically render a confession involuntary. The confession's admissibility depends upon the degree of intoxication. *Id*.

¶10. In the case *sub judice*, the State established a *prima facie* case that Morris's confession was voluntary through the testimony of both of the police officers who were present during the statement. The officers observed that Morris conversed intelligently and did not show any outward signs of drug or alcohol intoxication. Further, Morris knew the details of the two burglaries, including the manner of entry into the building and the particular items taken from the businesses.

¶11. Morris also had incredible recall of the events surrounding both his first and second trips to the police department on the day he entered his confession. Specifically, he remembered the following: he asked the police for help; he was turned away at the police station; he sat outside for approximately one hour while considering his options; he was concerned with securing a place to spend the night; and he gave the police officers the details that were contained in his statement. His only explanation of why he gave such a detailed statement was that he "was not in his right mind." The only event Morris did not remember was whether the officer read him his rights; however, he admitted that his signature appeared on the waiver form.

¶12. Morris offered nothing to rebut the State's *prima facie* case of voluntariness other than his own self-serving testimony that he was high on cocaine. Two experienced police officers viewed Morris's demeanor and did not believe that Morris was impaired in any manner. Morris's assertion that he was impaired by his cocaine consumption failed to rebut the State's *prima facie* case that the confession was voluntary. This is especially true given that Morris was able to recall the details of the burglaries, the particular items which were taken, and the events leading up to his confession.

¶13. The trial court did not commit manifest error in finding that Morris's statement was voluntarily and knowingly made. The trial judge did not apply an incorrect legal standard and the judge's finding of

voluntariness was not against the overwhelming weight of the evidence. Morris voluntarily visited the police department twice on the day he confessed to the burglaries. Morris did not allege that his confession was coerced. Morris initiated the encounter which resulted in his confession. Taking into consideration the totality of the circumstances, Morris's statement was the product of his free and rational choice.

¶14. Morris also argues that the trial court should have suppressed his statement because he apparently gave his statement before he waived his rights. Morris notes that the top of the form upon which his statement is written indicates that the statement began at 10:45 p.m. and the bottom of the form indicates that the statement concluded at 4:30 p.m. on the same day. Obviously, the statement could not have concluded before it started. The form upon which Morris's confession was written included waiver of rights language. Morris seems to believe that because of the time anomaly, his statement preceded the waiver.

¶15. At trial, Morris did not question any of the witnesses about the time anomaly. Further, he did not raise the issue in his motion for new trial. The trial court cannot be held in error on a legal point never presented for its consideration. *Chase v. State*, 645 So. 2d 829, 846 (Miss. 1994). We are not, thus, obligated to review this issue. Nevertheless, we are not concerned that Morris confessed before he waived his rights. The record reveals that Morris signed a separate waiver form at 3:45 p.m. on the day he gave his statement. Unarguably, 3:45 p.m. precedes 4:30 p.m. or 10:45 p.m.; thus, Morris clearly waived his rights before he gave his statement whether the statement began or concluded at 4:30 p.m. or 10:45 p.m.

¶16. Morris also claims that his statement should have been suppressed because Officer Chipley referred to handwritten notes that Morris made from which Officer Adcox obtained the information used in writing the statement. While the statement was introduced into evidence, Morris's handwritten notes were not. Morris claims that before his confession could be accepted as voluntary, the State was required to produce the source document from which the confession was written. Again, Morris failed to raise this issue before the trial court or in his new trial motion. Again, we are not obligated to review this assertion. Again, if we reviewed the assertion we would find it without merit.

¶17. Chipley testified in the suppression hearing that he thought Officer Adcox wrote the statement from handwritten notes made by Morris. This was the only time during either the hearing or the trial that the possible existence of handwritten notes was mentioned. Officer Adcox was not asked if Morris provided handwritten notes. Most importantly, Morris agreed that he supplied the information contained in the statement he signed. The State met its burden of proving that Morris voluntarily confessed to the burglaries, and the failure to include possible handwritten notes from Morris did not render his confession involuntary.

## II. SHOULD THE TRIAL COURT HAVE *SUA SPONTE* GRANTED A MISTRIAL?

¶18. Morris testified at trial that he did not commit the burglaries; rather, Gregory Baptiste and a guy nicknamed "Chicago" committed the crimes. Morris testified that he heard Baptiste and "Chicago" discussing the burglaries while they were all getting high. According to Morris, he gleaned the details of the burglary from this discussion. On cross-examination, the following colloquy ensued:

Q. Well, out of the presence of the jury, I showed you this [the statement], and I asked if you gave them [Adcox and Chipley] all this information, and you said you did; is that right?

A. Yes, I did.

Q. Did you or didn't you.

A. Yeah.

Q. All right. You left out the part at that time about Gregory Baptiste and some guy called Chicago telling you about it; didn't you.

A. You didn't ask me that.

Q. Oh, okay. Is that the game we are going to play, I didn't ask you that?

At this point Morris's attorney said "Your Honor, I will object to that." The judge sustained the objection and Morris's attorney commented: "That was an evidentiary hearing." Morris argues that because information from the suppression hearing was revealed to the jury, the trial court should have granted a mistrial. However, Morris's attorney did not move for a mistrial. He simply objected and the court sustained the objection. In short, he got what he asked for.

¶19. In *Blackwell v. State*, 44 So. 2d 409, 410 (Miss. 1950), the supreme court stated:

> It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of the defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial. Such a motion was not made in the instant case, and since the trial judge did all he was asked to do at the time of the occurrence, the error complained of does not entitle the defendant to have the case reversed.

Since he did not ask, Morris is not entitled to seek reversal based on alleged error by the trial court for not giving him relief he did not request.

¶20. Further, suppression hearings are held outside the presence of the jury so that evidence of a possible confession will not be revealed if the confession is found to be involuntary. Once the trial court admitted Morris's confession into evidence, the truthfulness and voluntariness of his confession were fodder for the jury's consideration. Once a confession is admitted, "'either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession.'" *Cole v. State*, 525 So. 2d 365, 368 (Miss. 1987) (quoting *Rhone v. State*, 254 So. 2d 750, 754 (Miss. 1971)). Inconsistencies in Morris's testimony during the suppression hearing and his trial testimony were relevant to the issue of truthfulness. The trial court was under no obligation to *sua sponte* declare a mistrial.

¶21. **THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF BUSINESS BURGLARY AND TWO SENTENCES OF LIFE IMPRISONMENT WITHOUT BENEFIT OF PAROLE, SUSPENSION, OR REDUCTION OF SENTENCE, IS AFFIRMED. COSTS ARE ASSESSED TO SCOTT COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING AND MYERS, JJ., CONCUR.**